S. B. Tressler v. Commissioner.
S. Tressler v. Commissioner
Docket Nos. 29044, 35129.
United States Tax Court
1953 Tax Ct. Memo LEXIS 318; 12 T.C.M. (CCH) 358; T.C.M. (RIA) 53111; March 31, 1953
Joseph A. Fitzsimmons, Esq., 212 Maxwell Arcade, Fort Lauderdale, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax of $701.07 for 1946 and $936.29 for 1947. By amended pleadings these deficiencies have been increased to $2,239.64 and $3,967.15, respectively. The questions for decision involve the proper treatment of the income of rental properties in the hands of a receiver appointed by a Florida court and expenditures made by the receiver. Also involved are claimed deductions for certain legal expenses; payments made to the petitioner's wife from the income of the receivership pursuant to court order and claimed as deductible under sections 22(k) and 23 (u); the computation of capital gain on the sale of an apartment house; the allowance of depreciation on the properties in receivership; and whether the deficiency notice for 1947 was timely. A number of alternative contentions are made by both parties. No useful purpose would be served by *320 setting out all the contentions in detail in this preliminary statement. They will be treated more fully in the opinion. Findings of Fact The petitioner is an individual residing in Reno, Nevada. His income tax returns for 1946 and 1947 were filed on the cash basis with the collector at Reno, Nevada. For 1947 the petitioner underestimated his tax on Form 1040-ES filed March 15, 1947, and an amended Form 1040-ES filed September 15, 1947. He filed his final return for 1947 on Form 1040 on January 12, 1948. The notice of deficiency for 1947 was dated March 14, 1951. In August, 1944, the petitioner married Ada Zoeller Tressler in Garrett County, Maryland. On their honeymoon the couple visited in Reno with the petitioner's sons Norman and Kenneth. From there they went to California and later to Florida to spend the winter. During the early months of 1945, while married to Ada and living with her, the petitioner purchased several parcels of real estate in Broward County, Florida, which included two apartment houses known as Maxwell Court Apartments and Tarpon River Apartments. Title to the apartment houses was taken in the name of the petitioner's son, Kenneth, and title to the other *321 properties was taken in the joint names of Ada and the petitioner. The Maxwell Court Apartments were purchased by the petitioner in January 1945 for the sum of $45,000. They consisted of eight furnished units. The land was valued at $3,600, furniture at $6,000, and the buildings at $35,400. The Tarpon River Apartments were purchased at the same time for the sum of $22,875. The land was valued at $2,200 and the furniture at $5,000, and the building consisting of four furnished units was valued at $15,675. The petitioner owned property in addition to that described above, and the receivership hereafter mentioned did not include all his property. On March 7, 1945, Ada filed in the Circuit Court of the Fifteenth Judicial Circuit in and for Broward County, Florida, a "Bill for Alimony Unconnected with Divorce" naming the petitioner, his son Kenneth, and Ruth Westerberg, individually, and as agent and employee of the petitioner, as defendants. The bill prayed for "temporary and permanent support and alimony unconnected with a divorce together with suit money and a reasonable amount with which to compensate her attorneys." Further, a declaratory decree was asked adjudging that the properties *322 purchased in the name of Kenneth were held in trust for the petitioner, that the defendants be restrained from transferring and encumbering the properties, that a writ of sequestration issue, and that a receiver be appointed to take charge of the properties, collect the rents, and pay same into court to insure the payment of any sums that may be adjudged due and payable to Ada by the petitioner. On March 13, 1945, the Florida court entered an order appointing Ruth Westerberg receiver for the two apartment properties, restraining Kenneth and the petitioner from transferring the properties, and directing the receiver to collect the rents, pay expenses of operation, and deposit the balance of the receipts in a bank subject to further court order. On June 28, 1945, an order was entered making an allowance of $300 per month, retroactive to March 3, 1945, for temporary alimony and support of Ada and $2,000 temporary attorney fees, and court costs of $334.86. This order was appealed by Kenneth, but his appeal was denied. On July 17, 1945, the petitioner was granted a divorce from Ada in an action begun by him May 7, 1945 in the Second Judicial District Court in Nevada. This action was *323 uncontested by Ada. No provision for alimony was made in the decree. In October 1945 Kenneth sought to file a further answer in the Florida proceedings in an effort to regain possession of the apartment properties and to plead therein the Nevada divorce decree. Kenneth was denied the right to file the answer. By order dated January 7, 1946, the Florida court decreed that the apartment properties purchased by the petitioner in the name of Kenneth were properties of the petitioner and held in trust for him by Kenneth. Later in January the court ordered the receiver to pay the sum of $5,334.86. This amount was made up of three items: (1) $3,000 for accrued support of Ada from March 3, 1945 to January 3, 1946; (2) $2,000 temporary attorney fees; and (3) $334.86 costs. An appeal from said orders was denied by the Florida Supreme Court and Kenneth took the matter to the United States Supreme Court. While that proceeding was pending, the petitioner himself began an action in a United States District Court in Florida against Ada, the receiver, et al., seeking recovery of his apartment properties held in receivership. A motion to dismiss was granted and an appeal was taken. While this appeal *324 was pending and after the United States Supreme Court had denied certiorari in Kenneth's case, the parties entered into a settlement agreement under which Ada acquired the Tarpon River Apartments and other properties and the petitioner retained the Maxwell Court Apartments. In accordance with the settlement agreement all the litigation above described was terminated and a decree was entered by the Florida court to the effect that the various court orders be marked satisfied and the properties be released from the receivership. On August 31, 1947, the petitioner sold the Maxwell Court Apartments for $59,000. A summary of the income and disposition of the rents collected, expenses paid, and disposition of the remaining funds by years by the receiver is shown in the following schedule: 1945
1946
1947
Total
Rents collected
$7,393.50
$11,092.95
$2,410.00
$20,896.45
Expenses paid
2,992.91
3,199.48
2,269.50
8,461.89
Income after maintenance expenses
$4,400.59
$ 7,893.47
$ 140.50
$12,434.56
Other payments by receiver: Ada Tressler
$ 3,000.00
$ 984.69
$ 3,984.69
Davis & Lockhart, Attorneys for Ada
Tressler
2,000.00
2,862.55 *
5,197.41
Ruth Westerberg, Receiver
1,559.46
1,559.46
Hugh Lester, Attorney for Receiver
1,500.00
1,500.00
Court Costs
334.86
193.00
193.00
Total other payments by receiver
$ 5,334.86
$7,099.70
$12,434.56
Amount retained by receiver
$4,400.59
$ 2,558.61
*325 In connection with the litigation in the Florida and the United States Courts, the petitioner bore the expense of the legal representation for Kenneth and himself. For the year 1946 he claimed on his return a deduction of $1,425 for legal expenses and attorneys fees. By amended pleadings he now claims $5,500. For 1947 he claimed a deduction of $5,035 for such expenses. By amended pleadings he now claims $6,535. The respondent determined a deficiency of $701.07 for 1946 based on disallowance of claimed legal expenses of $1,425 and depreciation of $1,931.25. By amended answer the respondent increased the deficiency for 1946 to $2,239.64 based on his contention that the petitioner realized additional income by reason of the payment of $5,334.86 made by the receiver to Ada under the January 17, 1946, order of the Florida court for support, attorney fees, and court costs. The respondent determined a deficiency of $936.29 for 1947 as a result of the disallowance of the claimed deduction of $5,035 for attorney fees and an error of $1,000 *326 (admitted by the petitioner) in computing net income. By amended answer this deficiency was increased to $3,967.15 partly based on the contention that the petitioner realized additional income by reason of payments amounting to $7,099.70 made by the receiver under final decree of the Florida court dated July 16, 1947. The increase also was occasioned by disallowance of $2,517.50 legal expenses which were added by the respondent to the cost of the Maxwell Court Apartments in computing the capital gain arising from the sale thereof. Another portion of the increase resulted from increasing the capital gain by offsetting depreciation for 1946 on the apartments in the sum of $1,246. Opinion Taxability to the Petitioner of Payments Made Under Court Order by Receiver On brief the respondent argues that the following amounts paid by the receiver of the apartment properties under court order from the rental receipts thereof should be added to the petitioner's income: 1946
1947
Ada Tressler
$3,000.00
$ 984.69
Attorneys for Ada Tressler
2,000.00
2,862.55
Attorneys for Receiver
1,500.00
Receiver's Fee
1,559.46
Court Costs
334.86
193.00
Totals
$5,334.86
$7,099.70
*327 With regard to the $5,334.86 paid in 1946 we think the respondent is correct. Of this amount, $3,000 represented accrued temporary alimony and support for the petitioner's wife, Ada; $2,000 was for temporary fees awarded her attorneys, and the remainder went for court costs. These items all represent obligations imposed on the petitioner by the Florida court. These obligations were satisfied in 1946 by the application of funds derived from rentals from properties found by the Florida court to belong to the petitioner. They were personal obligations of his unconnected with the operation of the properties by the receiver. The petitioner was on a cash basis and no argument can be made that 1946 was not the proper year in which to tax him. It was then that he received the benefit of the funds under court order through discharge of his obligations to Ada arising out of her action against him. That he had no actual control of the funds and did not receive cash in hand is of no consequence. We see the situation for 1947 somewhat differently. The $984.69 paid to Ada and the $193 court costs fall into the same categories as the 1946 payments and should properly be added to the petitioner's *328 income in 1947. Not so the $2,862.55 which the respondent treats as a payment to Ada's attorneys. An examination of the facts show that the Florida court ordered this amount paid to the attorneys in question not for services rendered to Ada in her attempt to collect support from the petitioner - rather the payment was made, in the words of the court, "for services rendered to the Receiver, in all Federal Courts." This amount, then, went to attorneys who, while nominally in Ada's employ, were nevertheless instrumental in protecting the receivership itself from attack. That was a receivership expense and so far as we can see, should be so treated. We see no reason for sustaining the respondent in attempting to tax the petitioner with the $2,862.55 paid to attorneys for services rendered the receivership. The same can be said for the $1,500 paid to the attorney for the receiver. That, too, was a receivership expense and the petitioner should not be taxed with it. Like treatment should be accorded the receiver's fees. The effect of our holding is that the petitioner is to be taxed only on the net income of the properties held by the receiver and then only in the year in which that income *329 was applied for his benefit. Cf. North American Oil Consolidated v. Burnet, 286 U.S. 417. Costs of the receiver in operating the receivership are not to be added to the petitioner's income. The petitioner's contention that it was the duty of the receiver to file returns and pay tax on the income of the apartment properties requires no discussion. The properties in receivership constituted only a part of the property owned by the petitioner and such a receiver is under no obligation to file a return. Section 142 (a), Internal Revenue Code; Reg. 111, 29.142-4; North American Oil Consolidated v. Burnet, supra. The petitioner's further contention, that the amounts paid to Ada are deductible by the petitioner under sections 22 (k) and 23 (u), is without merit. In order for the payments to be deductible this Court has said, in Charles L. Brown, 7 T.C. 715, 716: "The wife must be 'divorced or legally separated from her husband under a decree of divorce or of separate maintenance.' The payments in question must have been 'received subsequent to such decree.' And they must discharge an obligation 'under such decree or under *330 a written instrument incident to such divorce or separation.' ( Italics supplied.) Even in the last quotation, use of the word 'such' to define 'separation' demonstrates that what was meant was not any legal separation, as petitioner contends, but only one of a sort to which reference has already been made in the prior language, that is, a separation consummated 'under a decree * * * of separate maintenance.' See Frank J. Kalchthaler, 7 T.C. 625." The payments before us were made pursuant to orders of the Florida court in a suit entitled a "Bill for Alimony Unconnected with Divorce." They were denominated as "temporary alimony and support" by the court in its orders. So far as we can ascertain there never was entered in this litigation a "decree of separate maintenance" as required by section 22 (k). We think such payments should receive the same treatment as payments of alimony pendente lite or payments made between the entry of an interlocutory decree and the time the decree became final. In neither case are such payments deductible. Joseph A. Fields, 14 T.C. 1202, affd. 189 Fed. (2d) 950; Alice Humphreys Evans, 19 T.C. - (No. 126). The Nevada *331 divorce secured by the petitioner is of no significance on this issue. The payments were tied in with the Florida litigation alone and had no relation to the Nevada divorce which made no provision whatever for alimony or support. As a matter of fact the Florida courts resisted all of the petitioner's efforts to inject the Nevada divorce into the Florida proceedings. Deductibility of Claimed Legal Expenses The amount of legal fees claimed as a deduction is not too clear for 1946, but we think it is limited by the pleadings to $5,500. For 1947, $5,035 is claimed. The petitioner's contention with respect to these amounts is "that he is entitled to deduct the attorneys fees and legal expenses incurred in attempting to protect and recover possession of his business income producing properties." No sections of the Code are cited, nor are we referred to any cases by the petitioner and we do not know whether he relies on section 23 (a) (1) A or section 23 (a) (2). No matter, for we think the petitioner must fail under either. Title to the properties was originally taken in the name of the petitioner's son, Kenneth, and when Ada began her suit for support she asked that a receiver be *332 appointed to operate the apartments to insure the payment of any sums that might be found due her. She also asked the court to find that Kenneth held the properties in trust for the petitioner. Counsel were thereupon employed both for Kenneth and the petitioner in an attempt to sustain Kenneth's ownership of the apartments and the petitioner bore the entire cost of such representation. After the court found that Kenneth was holding the properties not for himself, but for the petitioner, the petitioner began an action in his own name in the federal courts. In that proceeding additional legal expenses were incurred. With reference to the fees paid by the petitioner on behalf of Kenneth we do not perceive any theory which would justify their deduction by the petitioner. He was no more than a volunteer in that respect. As to the petitioner's own legal expenses we think the principles of such cases as Lindsay C. Howard, 16 T.C. 157, affd. (C.A. 9, February 11, 1953) - Fed. (2d) -; Thorne Donnelley, 16 T.C. 1196; and Andrew Jergens, 17 T.C. 806 preclude their allowance as a deduction. All of those cases involved the deductibility of legal expenses *333 arising out of disputes between husband and wife over property settlements or alimony payments. All held the expenses to be nondeductible. The genesis of the litigation here is just such a dispute as was involved in those cases. There is one difference in the factual situation. Here, a receiver was appointed for part of the petitioner's properties as an incident of the litigation to insure payment of whatever might be found due to Ada from the petitioner for support, attorney fees, etc. We do not think that should change the result. The core of the litigation was not the receivership, but the obligation of the petitioner to support his wife. If that obligation was frustrated the receivership would fall. The legal expenses were incurred primarily to defeat the wife's suit and not to protect the petitioner's property. At one stage of the proceeding the petitioner was actually disclaiming ownership in favor of his son Kenneth. In Thorne Donnelley, supra, a somewhat similar argument to that made here was advanced, though it is true that a sequestration of the petitioner's property was merely threatened there and not actually ordered. This Court said "that the contention *334 that the expenditures for fees and costs represent the ordinary and necessary expenses of preserving and maintaining property held for the production of income because of resistance against enforcement of a personal obligation to pay alimony 'leaves us unmoved'." We hold that the petitioner is not entitled to deduct the claimed legal expenses and costs. He cites not a single case to support his contrary contention. The petitioner claims, in the alternative, that the legal fees and expenses should be added to the cost of the Maxwell Court Apartments since they were expenditures made in defense of title, thus reducing his capital gain on the sale. The answer to this is that they were not such expenditures. Title to the property was never in dispute, except by the petitioner himself. As pointed out above, the expenses were primarily incurred in attempting to defeat Ada's claim for support. Depreciation In the notice of deficiency for 1946 the respondent disallowed a depreciation claim in the amount of $1,931.25 for the reason that the petitioner did not report any of the income from the property placed in receivership for that year. Since we have held that the petitioner was properly *335 taxable on income from the receivership properties in 1946, we also hold that the claimed depreciation should have been allowed. We do not understand that the respondent contests this result. The petitioner in his amended pleadings has increased this claim to $3,020. The record contains no evidence on which we could reasonably make any finding on this issue and the increased claim is disallowed. Timeliness of 1947 Deficiency Notice The petitioner filed his return for 1947 on Form 1040 prior to January 15, 1948, thus eliminating the necessity of a final declaration of estimated tax in accordance with the provisions of section 58 (d) (3). Since the last day prescribed by law for filing this declaration was January 15, 1948, the petitioner contends that the period of limitation with respect to the 1947 deficiency expired three years thereafter, or January 15, 1951. The notice of deficiency for 1947 was dated March 14, 1951. We cannot agree with the petitioner. Section 53 requires returns to be filed on or before March 15 following the close of the calendar year. Under the conditions prescribed in section 58 (d) (3), a return filed on or before January 15 shall be considered a *336 declaration of estimated tax. Section 58 (d) (3) does not require a return to be filed before January 15. It simply gives the taxpayer an option to file before that date and if he does, then the return is treated as a declaration or amended declaration of estimated tax. It is a convenience to the taxpayer and we do not think it has anything to do with starting the three-year limitation provided for in section 275. That period started on March 15, 1948, and the deficiency notice dated March 14, 1951, was timely. Harry B. Sidles, 19 T.C. - (No. 128). The petitioner raises one other point. He claims that he overpaid his 1945 taxes and asks the Court to take this into consideration in computing possible deficiencies in this case. But that is a matter properly for administrative settlement or adjustment between the parties. The year 1945 is not before us and we make no determination on this point. Decision will be entered under Rule 50. Footnotes
*. This amount according to the court's order was for expenses and attorney fees "for services rendered to the Receiver, in all Federal Courts."↩